**In re Bette Mae LOUGH,
Alleged Debtor.**

**Bankruptcy No. 84–03451–R.**

United States Bankruptcy Court,
E.D. Michigan.

Feb. 24, 1986.

---

Paul Steinberg, Southfield, Mich., Robert Kane, Alpena, Mich., for debtor.

John Hebert, Bay City, Mich., for Peoples Bank & Trust.

## MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

The Peoples Bank & Trust of Alpena filed this involuntary petition against Bette Mae Lough pursuant to 11 U.S.C. § 303 arising from two debts which the bank claims that Mrs. Lough owes to it. For the reasons stated in this memorandum opinion,[1] the Court concludes that there is a bona fide dispute concerning the bank's claim, and that therefore the involuntary petition must be dismissed.

### I.

The first debt upon which the bank claims liability arose from a joint note which Mrs. Lough signed with her husband on April 30, 1973; this note has a balance of approximately $75,000. The second debt allegedly arose from a guaranty which Mrs. Lough signed on November 30, 1967 relating to her husband's various sole obligations with the bank; these obligations were consolidated into one note executed by Mr. Lough on February 19, 1981, in the approximate amount of $135,000. Thus, the bank claims a total indebtedness by Mrs. Lough in the approximate amount of $210,000. In its petition, the bank alleged that there are fewer than twelve creditors and that Mrs. Lough was not generally paying her debts, especially the debt to the bank, as they became due.

In her amended answer, Mrs. Lough admitted signing the April 30, 1973 joint note but nevertheless denied any liability on that note. She claims that this note was secured by a mortgage on property held by her and her husband as tenants by the entirety; that this property was deeded to the bank in lieu of foreclosure; and that if the proceeds from the bank's sale of this property had been applied to this note,

---

1. This memorandum opinion supplements a bench opinion given at the conclusion of trial.

rather than to a note on which Mr. Lough was obligated on solely, as required, then the proceeds would have been sufficient to extinguish the joint note.

In her amended answer, Mrs. Lough further alleged that although she signed the November 30, 1967 guaranty, she has no further liability on it in regard to her husband's note of February 19, 1981. She claims she has no liability on it because in 1967 she did not intend to guaranty what arose some fourteen or fifteen years later as a $135,000 note. She also contends that there was no consideration for this guaranty and no reliance upon it by the bank.

Mrs. Lough contends that because there is a bona fide dispute about the bank's claim against her, the bank does not qualify under 11 U.S.C. § 303 as a proper entity to file an involuntary petition in bankruptcy against her.

To this contention, the bank responds that there are no genuine issues of fact and that on the facts it is or would be entitled to a summary judgment against Mrs. Lough. Therefore, the bank argues, because there is no bona fide dispute, the bank is qualified to file this involuntary petition against Mrs. Lough.

## II.

### A.

11 U.S.C. § 303(b) provides that an involuntary case against a person is commenced by the filing with the bankruptcy court of a petition, pursuant to either subparagraph (1), "by three or more entities, each of which is ... a holder of a claim against such person that is not contingent as to liability or the subject [of] a bona fide dispute," or subparagraph (2) if there are fewer than 12 such holders, excluding employees and insiders, "by one or more of such holders." The phrase "such holders" in subparagraph (2) refers to holders of claims which are "not contingent as to liability or the subject [of] a bona fide dispute."

The Court notes that the phrase "bona fide dispute" also arises in subsection (h) of Section 303, which provides:

> If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if—(1) the debtor is not generally paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.

The parties cited three cases[2] interpreting the phrase "bona fide dispute", and these cases are not entirely consistent.

In *In re Johnson Hawks, Ltd.*, 49 B.R. 823 (Bankr.D.Hawaii 1985), the court noted that there had been a statutory change implemented by the Bankruptcy Amendments Act of 1984. After reviewing the pre–1984 law, the court noted that the 1984 amendments to the bankruptcy code made significant revisions regarding disputed claims. 49 B.R. at 830. First, the test for the standing of petitioning creditors was revised to provide that holders of claims which are subject to bona fide disputes are barred from being petitioning creditors. Second, debts which are subject to bona fide disputes were excluded from the test provided in section 303(h), which provides that the court shall order relief if the debtor is not paying debts as such debts become due. The court further stated:

> It is evident that under the 1984 amendments, creditors holding claims which are subject to bona fide disputes cannot be petitioning creditors under the threshold test of Section 303(b)(1). As stated in Colliers, "[t]his does not mean of course that the debtor can assert any defense to a claim and be successful. Presumably, there must be a 'bona fide dispute' which a bankruptcy judge must find either on a motion to dismiss or at

**2.** The parties also cited *In re Matter of Cinnamon Lake Corporation*, 48 B.R. 70 (Bankr.M.D. Fla.1985). However, that case was decided under Section 303 as it existed prior to the 1984 Bankruptcy Amendments Act. Accordingly, it cannot be considered in resolving the legal question at issue here.

trial." 2 Collier's on Bankruptcy ¶ 303.-08(b) (1985)....

A bona fide dispute is a conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side.

49 B.R. at 830.

Then the court listed the following factors to determine whether the claims or defenses are subject to a bona fide dispute:

1. The nature of the dispute;
2. The nature and the extent of the evidence and allegations presented in support of the creditor's claim and in support of the debtor's contrary claims.
3. Whether the creditor's claim and the debtor's contrary claims are made in good faith and without fraud or deceit.
4. Whether on balance the interests of the creditor outweighs those of the debtor.

*In re Henry,* 52 B.R. 8 (Bankr.S.D.Ohio 1985), reviewed at length the legislative history relating to the addition of the "bona fide dispute" language to Sections 303(b) and 303(h). The Court stated:

The reason for the introduction of this additional language in the statute was explained by its proponent as follows:

The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.

My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.

I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion. I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief. 30 Cong.Rec. S7618 (June 19, 1984) (comments of Senator Baucus).

52 B.R. at 9–10.

In *In re Stroop,* 51 B.R. 210, 212 (Bankr. D.Colo.1985), the court stated:

This Court has concluded that an appropriate standard in determining whether a claim is subject to a bona fide dispute for purposes of 11 U.S.C. § 303(b)(1) is that applicable on motions for summary judgment. If the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute.

### B.

This Court concludes that none of these standards for determining whether there is a bona fide dispute concerning a debt is entirely appropriate. The standard set forth in the *Johnston Hawks* case is unsatisfactory for two reasons. First, it improperly gives consideration to the balance of interests as between the creditor and the debtor. These considerations were carried forward from the pre–1984 Amendments Act cases, but there is no basis for this in the statute as amended.

Second, the inquiry into "good faith", "fraud", and "deceit", as mandated in *Johnston Hawks* involves subjective considerations as to the parties' respective intentions. For example, the *Johnston*

*Hawks* test would disqualify a creditor when a debtor has a defense which he or she offers in subjective good faith but which objectively has little or no merit. This Court simply cannot conclude that Congress intended to invoke any such considerations in the language "bona fide dispute." Accordingly, the Court rejects the *Johnston Hawks* test.

Likewise, the Court rejects the test of *In re Stroop.* Under that test, if the alleged debtor's defense to the claim of the petitioning creditor raises material issues of fact so that a summary judgment could not be entered as a matter of law in favor of the creditor, the claim is subject to a bona fide dispute. The difficulty is that the test does not fully address a case where there is a substantial dispute as to the proper application of law but no substantial issue of fact. It might be argued that *Stroop* would then require the Court to resolve the question of law as if on a motion for summary judgment and simply determine whether the alleged debtor is liable to the creditor.

■ Yet, this Court concludes that, given the previously quoted legislative history, *In re Henry, supra,* if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed. The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy. Accordingly, if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.

■ In this regard, the Court must emphasize that in deciding whether there is a bona fide dispute, it must not resolve any genuine issues of fact or law. If the Court concludes that there is a bona fide dispute on any issue of fact or law, this must not be interpreted as any indication of how the Court would resolve that issue of fact or law.

### III.

#### A.

■ With regard to the joint 1973 note on which the bank claims liability against Mrs. Lough, the Court finds that the debtor's defenses do create a bona fide dispute and that therefore she should not be required as a result of that dispute to pay that debt in order to avoid bankruptcy. As noted, Mrs. Lough claims that the issue involves the application of the proceeds from the sale of jointly held property, which the bank undertook following a deed in lieu of foreclosure. It is reasonably clear that if these proceeds had been applied to the 1973 note rather than the subsequent 1981 note, then there would be no liability on the 1973 note.

The bank contends that in the absence of instructions from Mrs. Lough and her husband, the bank could apply the proceeds as it saw fit and therefore it was proper for it to apply these proceeds to the later sole note of Mr. Lough. Although the bank has cited numerous cases which hold to that effect, the Court concludes that there is substantial merit (without resolving the issue) in Mrs. Lough's argument that the proceeds should have been applied to the joint 1973 note. There is substantial merit in this position because the proceeds which came into the bank's possession were the result of the sale of a joint asset and thus Mrs. Lough could reasonably argue that therefore it should have been applied to the joint note rather than to her husband's sole note. In support, Mrs. Lough could reasonably argue that otherwise, there would have been no consideration to her for the deed in lieu of foreclosure which she executed in the bank's favor.

Moreover, there is a genuine issue of material fact as to whether the bank was given instructions as to how to apply the proceeds of that sale. The parties stipulated that if the Lough's former attorney were called to testify, he would testify that

in the time period prior to the deed in lieu of foreclosure, it was the Loughs' position that the proceeds from the sale should be applied to the joint 1973 note. This plainly raises an issue of fact about whether the bank was aware of the Loughs' intent as to the proceeds of this sale.

Finally, the Court finds that there is substantial merit in the Loughs' alternative position that as a matter of law the proceeds should have been applied on a pro rata basis between the two distinct obligations, the result of which would likewise extinguish Mrs. Lough's liability on the 1973 note.

The Court finds, therefore, that there are genuine issues of fact and substantial, non-frivolous arguments as to the applicable law. Therefore, the Court finds that there is a bona fide dispute as to Mrs. Lough's liability on the 1973 note.

### B.

■ Likewise, the Court finds that there is a bona fide dispute as to her obligation on the guaranty. The bank has taken the position, and has cited case law, to the effect that this guaranty was an open-ended and continuing guaranty which, until revoked by Mrs. Lough, would apply to all obligations incurred by Mr. Lough after 1967. In response, however, Mrs. Lough has alleged that she simply never intended in 1967 when she signed this guaranty to guaranty her husband's debts for as long a period of time as fifteen years and to the extent of $135,000. The Court finds that there may be substantial merit to this position. It must be noted that on the day the guaranty was executed, Mr. Lough's only obligation was a rollover of an existing obligation in the amount of $20,000. In addition, credence is given to this argument by the fact that subsequently when the parties so intended, they entered into joint notes as to which then there would be no dispute about Mrs. Lough's obligation.

Perhaps most importantly, a legal issue arises as to whether there was consideration for the guaranty to the extent that the bank seeks to assert it now. In a guaranty circumstance, there is hardly ever, if ever, consideration which flows directly to the guarantor. In the circumstances of a guaranty, consideration most often consists of the reliance that the obligee, in this case the bank, places upon the guaranty. There is a substantial issue here about whether the bank relied upon this guaranty throughout this fourteen or fifteen year time period during which Mr. Lough continued to increase his borrowing for his business.

In this regard, the Court notes the testimony that the guaranty was buried in the files of the bank and apparently was located only in connection with preparation for this litigation. Thus, there is a substantial dispute about whether in February of 1981, when the note on which liability is now asserted was signed, the bank officers involved even knew about the guaranty. Finally, on Plaintiff's Exhibit 1, an account ledger card from this time period, the indication that there was a loan guaranty agreement signed by Mrs. Lough was crossed out; the question arises as to what inferences are to be drawn from that.

Therefore, the Court must conclude that there is a bona fide dispute as to whether Mrs. Lough is obligated on this guaranty.

### IV.

Because there is a bona fide dispute concerning both of the bank's claims against Mrs. Lough, the bank is ineligible to file an involuntary petition against her. 11 U.S.C. § 303(b).

Accordingly, the petition must be dismissed.