**In re Donald L. FALES, Debtor.**

**Bankruptcy No. 1–86–01392.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 24, 1987.

Steven E. Simon, Cincinnati, Ohio, for Albert Schuholz.

Dennis Liggett, Blue Ash, Ohio, for debtor.

E. Hanlin Bavely, Cincinnati, Ohio, Trustee.

## DECISION AND ORDER ON CONTESTED INVOLUNTARY PETITION

BURTON PERLMAN, Bankruptcy Judge.

Albert J. Schuholz, Jr., filed an involuntary petition pursuant to 11 U.S.C. § 303 against Donald L. Fales (hereafter "debtor"). The petition alleges that Schuholz is the holder of a claim against debtor in the amount of $12,931.88. He alleges further that Fales has less than 12 creditors and that debtor is generally not paying his debts as they become due. The petition alleges further that debtor has fraudulently preferred certain creditors within 90 days of the filing of the petition.

Debtor filed a motion to dismiss the case which we overruled, 64 B.R. 465 (Bkrtcy.S.D.Ohio). (Decision and Order dated September 10, 1986.)

The Bankruptcy Code at 11 U.S.C. § 303(b) to the extent here pertinent provides:

Section 303. Involuntary Cases

\* \* \* \* \* \*

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

\* \* \* \* \* \*

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

\* \* \* \* \* \*

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts that are the subject of a bona fide dispute; or

\* \* \* \* \* \*

The case came on for trial. At the trial, the issue before the court was whether debtor is generally paying his debts as they come due. Schuholz, the petitioner herein, of course bears the burden of proof of establishing this proposition. The petitioner established that debtor's adjusted gross income for 1985 was $9,820.00. His federal income tax on that amount was $1,094.00 which was not paid with his return. Debtor testified that his 1986 income was considerably better than it was in 1985, that he earned $4,275.00 in the first quarter of 1986, and a gross of some $18,000.00 for the full year of 1986. Debtor owes federal taxes in the amount of $3,265.00 for 1986, and this amount is unpaid. The evidence was that monthly expenses for debtor in living and debt service in each of the first four months of 1986 was in excess of $1,500.00 per month. Debtor and his wife testified that they were current on all their debts except for that of petitioner.

The debt to petitioner owed by debtor originated in a loan which petitioner made to debtor and one Perry Baker in 1979. Debtor and Baker were then engaged in a business named Creative Printing. The debt was not paid, and on November 7, 1980, petitioner filed suit against Baker and debtor in the amount of $14,027.00. Judgment against Baker and debtor jointly was rendered February 10, 1986, in the amount of $11,431.00, plus $1,500.00 in in-

terest on the latter sum. Petitioner then moved on March 10, 1986 to amend the original judgment and on July 15, 1986 amendments were entered by the court. The amounts finally found to be owing on which debtor was jointly and severally liable with Baker were $12,447.00, plus $2,297.00, with interest, after March 5, 1986. No payments have been made on this judgment.

Attention must be paid to debtor's residence, because the present controversy has much to do with that asset. Debtor and his wife bought their residence in 1973. It was titled jointly to them. It is located in Butler County, Ohio. There is a first mortgage on the home to Home Federal Savings and Loan in the amount of $16,452.00 as of April, 1986. On April 15, 1986, debtor borrowed $10,500.00 from Capital, securing Capital by a second mortgage on the property. Debtor places a value on the property of $38,000.00. In connection with the Capital second mortgage, an appraisal was done by an appraiser who placed a value of $43,500.00 on the property. The $10,500.00 was used to pay a variety of unsecured creditors. In addition, the 1985 federal tax was paid from those proceeds, as well as debtor's attorney's fees. Debtor is currently paying $363.00 per month on the mortgages.

We reach the following conclusions of fact from the evidence. Debtor is current, and is able to stay current with all of his debts except for that of petitioner. Second, while there was a bona fide dispute as to the indebtedness to petitioner, that was resolved when judgment was entered against debtor in February, 1986. No appeal was taken from that decision. The amount of the judgment then became due and payable. Debtor simply has no means with which to pay that judgment. The second mortgage loan secured from Capital arguably was a fraudulent conveyance, for it was obtained for the purpose of frustrating collection by petitioner of his judgment. While debtor testified that his motivation for taking out this loan was to pay off credit card debts on which a much higher

rate of interest was applicable, we find this to be but an incidental benefit, for it does not account for the timing of the loan.

This is an involuntary bankruptcy case involving a single creditor. The general rule is that an order for relief will not be granted in such a case. See 2 Collier on Bankruptcy (15th ed.), 303–19, ¶ 303.07[b]; *In re 7H Land and Cattle Co.*, 6 B.R. 29, 31 (Bankr.Nev.1980). A powerful argument in favor of the general rule is to be found in *In re Goldsmith*, 30 B.R. 956, 963 (Bankr.E.D.N.Y.1984) where the court very cogently elaborated on the proposition that bankruptcy courts must have great reservations about allowing themselves to be used for the collection of debts.

Notwithstanding the general rule, however, the present case is arguably within a well established exception to the single creditor general rule, for a showing has been made of special circumstances amounting to a fraudulent conveyance in the securing by debtor of a mortgage for the purpose of defeating collection efforts by petitioner of his judgment. 2 Collier on Bankruptcy (15th ed.), p. 303–19. This consideration suggests the outcome of the granting of an order for relief. It does not, however, settle the matter.

Even though the basis for an involuntary case has been established, 11 U.S.C. § 305 requires that we consider whether a dismissal would better serve the interests of creditors and the debtor. *In re Tarletz*, 27 B.R. 787, 793 (Bankr.D.Colo.1983); *In re Central Hobron Associates*, 41 B.R. 444, 451 (D. Hawaii 1984); *In re R. v. Seating, Inc.*, 8 B.R. 663 (Bankr.S.D.Fla.1981). In embarking upon this enquiry, we keep in mind the following from *In re R. v. Seating, supra*, at p. 665:

> One factor to be considered in determining whether the interests of creditors and the debtor would be better served by dismissal is the economy of bankruptcy administration....

It is clear to us that very large costs of administration by way of attorneys' fees will be incurred in this court if an order for

relief is granted. Such fees will arise because the trustee in the case will require that his attorney do the following. He will have to undertake proceedings to invalidate the security interest of the second mortgage, as well as that of the present petitioner who says that he has a judgment lien. Further, the trustee, pursuant to 11 U.S.C. § 547, will have to file adversary proceedings to pursue the distributees of the fund obtained by debtor in connection with which the second mortgage arose, contending that they received preferential transfers. Even if the trustee were successful in his preference suits, it cannot be said that he would fully recover that fund. Under the federal scheme, recovery derived from such effort, reduced by the costs of administration, would then be distributed among the unsecured creditors, which would include likely both the second mortgagee and petitioner. The efficiency of this procedure and its benefit to this petitioner is questionable, for at best he would participate to the extent of about 35% in a fund of $10,500.00 reduced by any failure to recover preferences and by the costs of administration.

The alternative course is to dismiss the petition here, and relegate petitioner to his state court remedies. We note parenthetically that the record before us shows that petitioner has done nothing in the state courts in an effort to collect his debt. There is recourse under state law for fraudulent conveyances. Counsel for petitioner has stated that Ohio Revised Code, § 1313.56 and § 1336.01 et seq. are state statutes regarding fraudulent conveyances which are applicable in this case. If the petitioner could set aside the second mortgage, his judgment lien would occupy the second secured position. In addition, petitioner could proceed by garnishment against debtor's wages, a course closed to him in bankruptcy.

Based upon the foregoing, we have reached the conclusion that the petition should be dismissed because the state court can serve the interests of petitioner at least

as well as can this court. *In re Tarletz, supra.*

So Ordered.