Felix Earl **KNIGHT**, Appellant,

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee.**

No. 2–86–161–CV.

Court of Appeals of Texas, Fort Worth.

April 30, 1987.

Alley and Alley by Travis Alley, Fort Worth, for appellant.

Miskin & Etter by Andrew B. Etter, Fort Worth, for appellee.

Before BURDOCK, JOE SPURLOCK, II and HILL, JJ.

## OPINION

BURDOCK, Justice.

Appellant, Felix Earl Knight, appeals from the granting of a deficiency judgment in favor of appellee, General Motors Acceptance Corporation (GMAC), the holder of a security interest by virtue of a retail installment contract.

We reverse and render judgment for Knight.

The trial below was to the court. The judge entered a judgment against Knight which awarded appellee $1,300.63, plus pre-judgment interest in the amount of $513.70 and $1,000.00 in attorney's fees.

On July 30, 1979, Knight purchased a 1980 Pontiac from Bill McDavid Pontiac, Inc. He paid $900.00 down and signed a retail installment contract to finance the remaining balance due on the car, as well as insurance and other fees. The contract bore an annual percentage rate of 13.61% and obligated Knight to make 42 monthly payments of $216.63. The seller retained a security interest in the vehicle. McDavid Pontiac subsequently assigned the contract and its security interest to GMAC.

In late 1981, the Pontiac developed mechanical problems and Knight left it at McDavid's for repairs. A dispute arose over who was responsible for the repairs. GMAC eventually repossessed the car after Knight failed to make the payments.

On December 21, 1981, GMAC wrote Knight to inform him it had taken the Pontiac. This letter also outlined what would be done with the car if the past due payments, late charges, and expenses were not paid. Knight did not pay the amount requested by GMAC. Subsequently, the car was sold at a private sale to a third party. GMAC then sued Knight to recover the difference between the amount he still owed on the vehicle and what it had sold for at the private sale. GMAC also sought interest and its expenses from the sale in this deficiency action.

In several points of error, Knight now alleges there was no evidence or insufficient evidence to support the trial court's conclusion of law number seven that GMAC sold or otherwise disposed of the vehicle in a manner which was consistent with the terms of the retail installment contract.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, *First Nat. Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a special issue. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

After the car was repossessed, GMAC sent Knight the following letter:

GENERAL MOTORS ACCEPTANCE CORPORATION

P.O. Box 2229

Ft Worth, Texas 76113    *Exhibit B.*

Telephone No. 921-5311

Date 12-21-81

*Folix E Knight
1001 Bradley
Ft.Worth,Tx 76105*

Account No. 1319 32290

Since you have not made your payments, we have taken your vehicle. It is to be held at 2917 W 7th St., Fort Worth,Texas . It must be held at least until 9:00 a.m. Jan. 4 , 1982. It may be sold at any time after that. (A sale includes a lease.)

To get your vehicle back you must pay all past due payments, plus expenses. Then you must start your monthly payments again. You can get your vehicle back any time until it is sold. As of the date of this letter you must pay:

Past Due Payments ( 2 of $ 239.46 and one of $ )    $ 478.92

Late Charges,    $ 15.00

Expenses    $ 175.00

Total    $ 668.92

The longer you wait, the more you may have to pay to get your vehicle back. Only reasonable expenses may be charged. They must be the direct result of retaking, storing, and selling the vehicle. We can also charge you the costs of getting it ready for sale and reasonable lawyers' fees.

If the vehicle is sold, the unpaid balance, expenses, and other liens will be deducted from the sale price. If any money is left, it must be sent to you within 45 days. If you do not get the money, you may have the right to sue for it plus any penalties fixed by law.

If the sale price is less than the total amount you owe, you still owe the rest.

If you have insurance or a service contract through GM, GMAC, MIC or CIM as part of your contract, we will cancel it. Make sure any other coverage you no longer want is cancelled. Call the insurance company or the dealer to do this. You have a right to credit for any refunds.

Any personal property that was in your vehicle and has not already been returned is being held at NA . You may claim it on any business day between 9 A.M. and 5 P.M. within 30 days from the date of this letter.

Contact us to get your vehicle back. If you have any questions, let us know.

Signed

GMAC argues on appeal that the above notice is sufficient under TEX.BUS. & COM.CODE ANN. sec. 9.504(c) (Vernon Supp.1987),[1] which governs the disposition of collateral upon default. This section states in part:

Unless collateral is perishable ... reasonable notification of the time and place of any public sale *or* reasonable notification of the time after which any private

sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

*Id.*

A plain reading of section 9.504(c) indicates it provides for two types of nonjudicial sales of repossessed collateral and two methods of informing the debtor of the disposition of his property. BAGGETT, GENERAL CONSIDERATION IN TEXAS

1. All references are to the Business and Commerce Code Annotated ("Code").

FORECLOSURE LAW AND PRACTICE secs. 3.28, 3.33, 3.34 (1984). If collateral is to be disposed of at a public sale, the Code requires that the secured party notify the debtor of the time and place of the sale. BAGGETT, *supra*, sec. 3.33. However, if the collateral is to be sold at a private sale, the debtor must be notified of the time after which the collateral may be disposed of at such a sale. BAGGETT, *supra*, section 3.34; TEX.BUS. & COM.CODE ANN. sec. 9.504(c).

GMAC maintains since Knight's Pontiac was disposed of at a private sale and notice was mailed at least ten days prior to the disposition of the collateral, it has complied with section 9.504 of the Code. Knight argues that, pursuant to the security agreement, GMAC consented to inform him of the time and place of any sale or intended disposition of the Pontiac. Here, the retail installment contract under which Knight purchased the Pontiac specifically provides how GMAC must satisfy its obligation to give "reasonable notification" of the time and place of any public or private sale. The third paragraph, section 6, sets forth the seller's rights in the event of the buyer's default, as follows:

> The requirement of reasonable notification *of the time and place of any public or private sale* or other intended disposition shall be met if notice thereof is mailed, postage prepaid, to the buyer at his last known address and any other person entitled thereto ten (10) days prior to such sale or other disposition of the property. [Emphasis added.]

■ Section 1.102 of the Code specifically provides that parties may agree to determine the standards by which the performance of obligations such as providing "reasonable notice" are to be measured, so long as such standards are not "manifestly unreasonable". *See* TEX.BUS. & COM. CODE ANN. sec. 1.102 (Vernon 1968); TEX.BUS. & COM.CODE ANN. sec. 9.501 (Vernon Supp.1987); *see also Taylor v. Banks*, 392 S.W.2d 856, 858 (Tex.1965). We find no evidence that GMAC complied with its own contract. To the contrary, GMAC admits that it did not notify Knight of the time and place of any sale, because the Pontiac was sold to a third party at a private sale. Therefore, the uncontradicted evidence establishes GMAC did not adhere to the contractual provisions set forth above. Accordingly, we sustain appellant's points of error one, five, and nine, and we find no evidence in support of conclusion of law number seven concerning "reasonable notice". Since our holding on these points disposes of this appeal, we shall not consider the remaining points of error advanced by appellant.

■ In cases where the secured creditor fails to give reasonable notice to the debtor of its intention to dispose of the property, the creditor may elect to retain the collateral in complete satisfaction of the debt. *See* TEX.BUS. & COM.CODE ANN. sec. 9.505(b) (Vernon Supp.1987); *Tanenbaum v. Economics Laboratory Inc.*, 628 S.W.2d 769, 771 (Tex.1982). We find GMAC's failure to notify Knight of the time and place of the sale as per the security agreement amounts to an election by GMAC to retain the collateral in complete satisfaction of the debt.

Under TEX.R.APP.P. 80(b) and 81(b), when we sustain a "no evidence" point it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *See Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176 (Tex.1986) (per curiam); *National Life and Accident Insurance Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969). Therefore, we reverse the judgment of the court below and render judgment for appellant.