In re NORRISS BROTHERS LUMBER
COMPANY, INC., Debtor.

**Bankruptcy No. 791–70154 RCM–7.**

United States Bankruptcy Court,
N.D. Texas,
Wichita Falls Division.

Oct. 25, 1991.

Michael J. Quilling, Dallas, Tex., for debtor.

John A. Leonard, Wichita Falls, Tex., for Bank One.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

This is a contested involuntary petition. There are three issues. First, whether the claim of Bank One, Texas, N.A. ("Bank One"), one of the three initial petitioning creditors, is subject to *bona fide* dispute within the meaning of § 303(b)(1). The Court finds Bank One's claim is subject to *bona fide* dispute.

Second, whether the joinder of other claimants with nondisputed claims removes the impediment to Bank One's filing. The Court finds that such joinder does not remove the impediment.

Third, whether special circumstances exist which remove the three creditor requirement. Under the facts of this case, such an exception exists and an order for relief is appropriate.

### Contentions of the Parties

The involuntary petition was filed May 10, 1991 by petitioners, Bank One, Dallas Wholesale Builders Supply, Inc. ("Dallas Wholesale") and Specialty Products ("Specialty"). The response of Norriss Brothers Lumber Company, Inc. ("Norriss" or "Debtor"), alleged debtor, contended that Bank One's debt was subject to *bona fide* dispute, but admitted that Dallas Wholesale's debt ($39,855.83) and Specialty's debt ($9,300) are not contingent and are not subject to *bona fide* dispute.

Norriss' principal place of business and its principal assets have been within this District for the 180 days preceding the filing of the petition.

In its response to the involuntary petition, Norriss admitted that it is generally not paying its debts as they become due. Norriss further admitted that it is in the process of winding up its business affairs, and is in the process of liquidating its assets for the payment of creditors.

On July 12, 1991, and July 15, 1991, respectively, Cotter & Company ("Cotter"), an undisputed creditor with a debt of $126,-515.27, and Texoma Broadcasting Corp., d/b/a KFDX–TV, ("TBC"), a April 10, 1991 judgment creditor for $794.75, intervened in this action.

Norriss contends that, since the initial filing was tainted with bad faith, the later intervention of additional creditors does not cure the allegedly faulty initial filing, and, in fact, intervention is not permissible to cure the defective petition, based on Bank One's initial alleged fraudulent attempt to confer jurisdiction upon this Court.

### The Underlying Facts

On or about December 16, 1988, Norriss executed and delivered to MBank Wichita Falls, N.A. a Commercial Term Note in the face amount of $400,000 (the "Term Note"), which note matured by its own terms on June 1, 1989.

On or about April 1, 1989, Norriss executed and delivered to Deposit Insurance Bridge Bank, N.A. a Promissory Note in the stated face amount of $1,900,000, which note matured by its own terms on June 30, 1989 (the "Revolving Note").

Norriss is a Texas Corporation whose sole shareholders, directors and officers are C.E. Norriss, Jr. and Gary Norriss.

On or about July 1, 1988, C.E. Norriss, Jr. and Gary Norriss each executed and delivered to MBank Wichita Falls, N.A., a Continuing Guaranty of any and all indebtedness of Norriss to MBank Wichita Falls, N.A. then existing or thereafter created, including all renewals and extensions thereof (the "Guaranty").

On or about April 1, 1989, to secure repayment of the Term Note and the Revolving Note, Norriss executed and delivered to Deposit Insurance Bridge Bank, N.A., a Security Agreement covering the collateral more particularly described therein, but being generally described as all inventory, accounts receivable and general intangibles then existing or thereafter created (the "Security Agreement"). Deposit Insurance Bridge Bank, N.A. duly perfected the security interest reflected in the Security Agreement.

Bank One is currently the owner and holder of the Term Note and the Revolving Note, and, subject to any defenses referred to hereafter, is entitled to all rights and benefits under the Continuing Guaranty and the Security Agreement.

On October 16, 1990, Bonnet Resources Corporation, on behalf of Bank One, made written demand upon Norriss to pay the outstanding amounts due under the Term Note and the Revolving Note.

Subsequent to October 16, 1990, Norriss was unable to pay the amounts demanded by Bank One, and, thus, began negotiations with Bank One to try to refinance the debt.

On or about December 11, 1990, Norriss, C.E. Norriss, Jr. and Gary Norriss entered into an agreement with Bank One pursuant to which Norriss was given a ninety-day period to attempt to find alternative financing (the "Bank One Agreement"). Pursuant to the terms of the Bank One Agreement, Bank One agreed to discount the Term Note and the Revolving Note and to accept $1,200,000 in full satisfaction of the indebtedness within such ninety-day period provided that, during such ninety-day period, Norriss made payments against the indebtedness of $5,000 per week.

The Bank One Agreement expired by its own terms on February 15, 1991. Norriss was unable to obtain alternative financing during the ninety-day period covered by the Bank One Agreement.

Prior to the expiration of the term of the Bank One Agreement, Norriss entered into a flurry of transactions transferring and encumbering its assets. Those transactions are described more fully hereafter. On January 28, 1991, Norriss executed a Promissory Note in the amount of $100,000 in favor of Augusta Leach Norriss. In order to secure repayment of such note, on or about January 28, 1991, Norriss executed a Security Agreement in favor of Augusta Leach Norriss, covering all equipment and fixtures then owned or thereafter acquired by Norriss. No creditor apparently had any substantial liens on equipment prior to then.

On or about January 28, 1991, C.E. Norriss, Jr. and his wife, Lila Mae Norriss, sold an unencumbered parcel of real estate (lake lot) to Augusta Leach Norriss for the sum of $3,000 cash and a $28,000 promissory note. Such promissory note was secured by a deed of trust against the property in favor of C.E. Norriss, Jr. and wife.

On or about February 7, 1991, Norriss Container, Inc. was incorporated, and all shares of stock in the corporation were then and are currently owned by Augusta Leach Norriss, the mother of C.E. Norriss, Jr. and the grandmother of Gary Norriss. Debtor promptly discontinued its operations as Norriss, rolling them over into the newly-created entity, Norriss Container, Inc.

On February 13, 1991, Norriss ceased operations of its Container Plant Division in Burkburnett; terminated the real estate lease relating to the Container Plant Division; fired all employees of that division; and sold the improvements on the property to Norriss Container, Inc.; and that, thereafter, Norriss Container, Inc., owned certain equipment, inventory and building materials previously belonging to Norriss. The majority of the fired Norriss employees were immediately reemployed by the newly-created entity, Norriss Container, Inc.[1]

---

1. Arguably the transfers to Norriss Container, Inc., referred to herein, may have been, in whole or in part, fraudulent conveyances. Norriss contends the transfers were *bona fide* and for fair value. The evidence on fair value was not fully developed. Less than full development of the evidence on an issue of this nature in an involuntary is proper from both sides' stand-

At the time of its creation, Norriss Container, Inc. had minimum capitalization, and its officers were identical to those of Norriss.

Augusta Leach Norriss financed Norriss Container, Inc.'s purchase of Norriss' equipment and inventory, and in consideration therefore, received a lien on any equipment purchased by Norriss Container, Inc. The proceeds from the sale of Norriss' equipment and inventory were transferred to insiders of Debtor (Gary Norriss and Augusta Leach Norriss), and were used to partially pay an antecedent debt owed by Debtor, $17,450 to First National Bank of Burkburnett.

Upon receiving notice of the transfer of assets, counsel for Bank One made written demand upon Norriss, by and through its counsel to rescind the transaction between Norriss and Norriss Container, Inc.

On February 25, 1991, Bank One, by and through its then counsel, made written demand upon Norriss to pay the amounts outstanding under the Term Note and the Revolving Note, and demanded the turnover of its collateral.

As of July 16, 1991, Bank One claims that it is owed $2,254,393.22 under the Revolving Note.

As of July 16, 1991, Bank One claims that it is owed the sum of $450,352.42 under the Term Note.

All of Bank One's collateral specified in the Security Agreement is worth substantially less than the amount Bank One claims it is owed.

Also, during early to mid 1991, in addition to the transfers and encumbrance of its assets described above, Norriss entered into transactions for the benefit of insider-guarantors, C.E. Norriss, Jr. and Gary Norriss (the "Norrisses"). From the record developed, it appears that property of Debtor, or property in which Debtor had an interest, was transferred to First National Bank in Burkburnett to relieve the Norrisses of liability on their guaranty obligations owed it. First National Bank in Burkburnett held a first lien Deed of Trust against

certain real property upon which Norriss operated its facilities (other than the Container Plant Division), and had posted such property for foreclosure sale on March 5, 1991. Such Deed of Trust secured repayment of a note executed by Norriss in favor of First National Bank in Burkburnett which note was personally guaranteed by the Norrisses.

On or about March 6, 1991, Norriss entered into an agreement with First National Bank in Burkburnett, pursuant to which Norriss agreed to give First National Bank in Burkburnett a Deed in Lieu of Foreclosure with respect to the real property upon which its facilities were located and to deliver a Bill of Sale conveying certain equipment to First National Bank in Burkburnett (the "First National Agreement). This action may have eliminated any possible deficiency claim against the Norrisses.

In addition, on March 5, 1991, as part of the First National Agreement, C.E. Norriss, Jr. transferred the Note and Deed of Trust from Augusta Leach Norriss, with respect to the lake lot, to First National Bank in Burkburnett.

At midnight on March 4, 1991, Norriss voluntarily ceased business operations.

On March 4, 1991, Bank One notified the account debtors of Norriss that they should send their payments directly to Bank One.

During the period of February 20, 1991 through March 13, 1991, Norriss received cash receipts from the accounts receivable pledged to Bank One totalling at least $71,904.91. Bank One made verbal requests for turnover of such funds, which requests were denied.

There were disputes between Bank One and Norriss about whether Norriss was refusing to turn over Norriss' inventory unconditionally. However, Bank One gained undisputed possession of the inventory in which it held a security interest by March 29, 1991.

On March 6, 1991, Bank One filed a petition in the District Court of Wichita Falls County, Texas, to recover a judgment

point since an involuntary is an accelerated trial.

against Norriss and its individual guarantors for the entire amount of the indebtedness owed Bank One. In addition, it sought applications for extraordinary relief of prejudgment temporary restraining orders, prejudgment garnishments, and prejudgment writ of attachment (the "State Court Action"). Bank One amended its State Court petition on April 4, 1991. No request for judicial foreclosure of its liens in its collateral was made in either the original or amended petitions. No orders of sale were sought from the State Court. In both the original and amended petition, Bank One pled that all offsets and credits had been allowed. Hearings were held in the State Court Action, and discovery was taken.

Since at least March 1, 1991, Norriss has been unable to pay its debts as they become due.

Since March 4, 1991, Norriss has paid some of its creditors for various goods and services. These transfers may have been preferences.

Since March 4, 1991, Norriss has caused an auction to be held with respect to certain of its equipment and fixtures, the proceeds of which have been paid to attorneys for Norriss in payment of legal fees. Arguably, part of such payment may have been on an antecedent debt, and may have been a preference.

On May 10, 1991, the involuntary bankruptcy petition was filed against Norriss. As of the date of the filing of the involuntary bankruptcy proceeding, Norriss' only defensive pleading on file to the State Court Action was a general denial. Though it had not filed a counterclaim, it had made known its defensive claim in a trial brief filed in the State Court Action, and from the discovery taken to date. Under the facts developed through discovery, Norriss has asserted that Bank One held its collateral, Norriss' inventory and accounts receivable collections, for an unreasonable length of time, without notice of public sale, and, as a matter of law, had elected to retain the collateral in satisfaction of the Bank One debt. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d

769, 771–772 (Tex.1982) and § 9.505 of the Texas U.C.C. Because of Bank One's alleged acts or omissions, Debtor contends it has no remaining liability to Bank One, and further, that Bank One has liability to it for damages arising from Bank One's attachment and garnishment proceedings, brought as ancillary matters to the State Court Action.

In its response to the involuntary petition, Norriss contended that the State Court Action raises issues concerning the enforceability of Bank One's claim and constitutes a *bona fide* dispute for purposes of determining Bank One's creditor standing.

Post-petition, an agreed order lifting the stay was entered to permit Bank One to foreclose its liens in its collateral, specifically reserving Norriss' defensive claim that, under *Tanenbaum*, there was no debt owed Bank One. The order provides that it shall not be used as a determination of any issue of fact, and has no collateral estoppel or *res judicata* effect in any proceeding between Norriss and Bank One.

### *Whether Bank One's Claim Was in Bona Fide Dispute*

■ For a creditor to successfully petition for involuntary bankruptcy, the creditor must have standing. A petitioning creditor does not have standing when there is a *bona fide* dispute over its claim. *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540 (10th Cir.1988); *In re Nordbrock*, 772 F.2d 397, 399 (8th Cir.1985).

The requirement that the debt not be subject to *bona fide* dispute was created by the 1984 Bankruptcy Amendments ("BAFJA"). 11 U.S.C. 303(b)(1); Lawrence P. King, 2 *Collier on Bankruptcy* ¶ 303.08 11(b) (15th ed. 1991). The term "*bona fide* dispute" is not defined in the Bankruptcy Code. Different courts have used different standards for making this determination. In the case of *In re Lough*, 57 B.R. 993 (Bankr.E.D.Mich.1986), the court held that:

.... if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed

facts, then the petition must be dismissed.

In this regard, the Court must emphasize that in deciding whether there is a bona fide dispute, it must not resolve any genuine issues of fact or law. If the Court concludes that there is a bona fide dispute on any issue of fact or law, this must not be interpreted as any indication of how the Court would resolve that issue of fact or law.

*Id.* at 997. The *Lough* standard has been adopted by every circuit court that has considered a *bona fide* dispute question. *Matter of Busick*, 831 F.2d 745, 749 (7th Cir.1987); *Bartmann, supra* at 1544; *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3rd Cir.1989). This is an objective standard. Lawrence P. King, 2 *Collier on Bankruptcy* ¶ 303.08 11(b) at p. 303–39 (15th ed. 1991). *See also, In re Kujawa*, 112 B.R. 968 (Bankr.E.D.Mo. 1990); *In re Tikijian*, 76 B.R. 304 (Bankr. S.D.N.Y.1987).

The court, in *Lough*, rejected standards adopted in such cases as *In re Stroop*, 51 B.R. 210, 212 (Bankr.D.Col.1985), which formulated a "summary judgment" test, because they did not deal adequately with those disputes which, while they had no substantial facts in issue, were concerned instead with a dispute about the proper application of law. It also rejected the standards adopted in such cases as *In re Johnston Hawks, Ltd.*, 49 B.R. 823, 831 (Bankr.D.Hawaii 1985), which formulated a "subjective, balancing" test. The *Lough* court felt that, in such cases, the analysis was too subjective, requiring decisions on good faith, fraud and deceit, and also used a balancing of interests test for which there is no basis in the 1984 Amendment. Other courts have rejected the *In re Johnston Hawks, Ltd.* standard as too cumbersome, and it has not been widely adopted. *In re Kujawa, supra.*

■ The *Lough* standard does not require the Court to determine the probable outcome of a dispute, only its presence or absence. In adopting the *Lough* standard, the court, in *In the Matter of Busick, supra,* held that only a limited analysis of the claims at issue is necessary in order to determine whether an issue of material fact exists that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed fact. The holding and reasoning in *Busick* has been followed by *In re Ramm Industries, Inc.*, 83 B.R. 815 (Bankr.M.D.Fla.1988); *In re Milton Braten*, 86 B.R. 340 (Bankr. S.D.N.Y.1988); *In re General Trading, Inc.*, 87 B.R. 216 (Bankr.S.D.Fla.1988); and *In re Kujawa, supra.* The District Court, in *Matter of Busick*, 65 B.R. 630 (N.D.Ind. 1986), emphasized that *"bona fide"*, as it appears in § 303, "refers only to a dispute, not the moral character of those involved in it." *Id.* at 638.

■ The mere existence of State Court litigation and the assertion by an alleged debtor of various defenses or counterclaims is not *per se* a *bona fide* dispute. *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492, 495 (Bankr.S.D.N.Y.1985).

The credible testimony is that Bank One had multiple legitimate concerns in filing the involuntary bankruptcy proceedings: (1) Debtor's discontinuance of its business operations as Norriss, and its resumption of same, through a competing corporation wholly-owned and controlled by insiders of Debtor; (2) the disappearance of some of Bank One's collateral; (3) possible fraudulent conveyances and preferences to insiders and others.

This bankruptcy petition was filed May 10, 1991, prior to the running of the ninety-day period on possible preference actions on the Norriss Container, Inc. transfers of on or about February 13, 1991, and other later transfers.[2]

Under the *Lough* test, the Court must determine if there is a genuine issue of a

---

**2.** There was competing testimony from Norriss about its dealing with a bank entity that was unable or unwilling to come to prompt decisions, and the necessity of salvaging and preserving for Norriss and its creditors the value of in-house purchase orders; also, Bank One cut off Norriss' money supply. Norriss contended that its pre-bankruptcy transactions were fair to its creditors and the only way that it could effectively salvage its assets.

material fact that bears upon Norriss' liability to Bank or a meritorious contention as to the application of law to the undisputed facts.

### Notice and Sale Commercial Reasonableness

Instead of judicial foreclosure, unless otherwise agreed, a secured party has the right upon default to take possession of the collateral without judicial process. Tex. Bus. & Com.Code Ann. § 9.503 (Tex.U.C.C.) (Vernon 1991). In such event, the creditor must comply with applicable provisions of Tex.Bus. & Com.Code Ann. and applicable case law. More particularly, after repossession, the secured party has the right to sell, lease, or otherwise dispose of the collateral upon default after notice. Tex.Bus. & Com.Code Ann. § 9.504 (Vernon 1991). The disposition may be by either public or private proceeding; however, every aspect of the disposition must be commercially reasonable. Tex.Bus. & Com.Code Ann. § 9.504(c) (Vernon 1991).

The secured party is obligated to notify the debtor reasonably of the time and place of any public sale or of the time after which any private disposition is to be made, in accordance with statutory requirements. Tex.Bus. & Com.Code Ann. § 9.504(c) (Vernon 1991).

■ The failure to comply with these requirements of notice and sale is an absolute bar to the recovery of a deficiency judgment, and notice and sale of the collateral is a condition precedent to filing a petition to recover a deficiency. *Tanenbaum, supra.* In *Tanenbaum,* the creditor took back the collateral, determined it could not be repaired economically, scrapped it, and filed for a deficiency judgment. The court held that the creditor could not sue for the deficiency because of §§ 9.504 and 9.505 of Texas U.C.C.

■ The secured party must make an election between retaining the collateral pursuant to § 9.505 of the Texas U.C.C., and disposing of the collateral under § 9.504 of the Texas U.C.C. *Tanenbaum, supra.*

■ In order for a creditor in a secured transaction to sue for a deficiency, he must first comply with those provisions of the section of the Tex.Bus. & Com.Code Ann. which governs disposition of collateral, and dispose of the collateral in a commercially reasonable manner. *Whirlybirds Leasing Co. v. Aerospatiale Helicopter,* 749 S.W.2d 915 (Tex.App.—Dallas 1988, no writ) (Court of Appeals held that, where creditor repossessed and disposed of the collateral without notice, it was not entitled to sue for a deficiency, reversing summary judgment in favor of the creditor); *Tanenbaum, supra. See also, Molyneaux v. MBank Corpus Christi, N.A.,* 776 S.W.2d 744 (Tex.App.—Corpus Christi 1989, no writ); *Carroll v. General Electric Corporation Credit Corp.,* 734 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ Notice of sale of collateral *and* commercial reasonableness of the sale are elements of a secured creditor's cause of action in a suit on debt in a secured transaction. *Molyneaux, supra; Whirlybirds Leasing, supra; Daniell v. Citizens Bank,* 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ); *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 948 (Tex.App.—Houston [1st Dist.] 1988, no writ).

All of the aforementioned cases, *Tanenbaum, Carroll, Molyneaux, Daniell, Federal Deposit Ins. Corp.,* and *Whirlybirds,* were appeals from summary judgments, and in all of them it was held that the creditor was not entitled to summary judgment because there had been no notice and sale of the collateral.

In *Carroll, supra,* the creditor brought suit against guarantors of a promissory note. The court of civil appeals reversed the summary judgment for the creditor in the trial court, holding that the creditor failed to dispose of the collateral in a reasonably commercial manner. Where no notice of sale was given, the creditor sold the collateral after summary judgment was granted and filed a credit to the judgment. At p. 154, the court stated:

■ Appellants argue that this is not merely a suit on a guaranty agreement,

but is a suit for deficiency after foreclosure on secured property. We agree. As a secured creditor *suing after foreclosure*, G.E. was required to show that it gave appellants notice of the public sale and that the collateral was sold in a commercially reasonable manner. *Achimon v. J.I. Case Credit Corp*, 715 S.W.2d 73 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285 (Tex.App.—Dallas 1985, no writ). The source of this requirement is the 'strict language' of sec. 9.504 of the code. *Achimon*, 715 S.W.2d at 76.

*Carroll, supra* at 154 (Emphasis supplied). The *Carroll* court further stated:

Section 9.504 gives the creditor the widest leeway in disposing of collateral, the only limit being that the disposition must be commercially reasonable, and must be made only after notification to the debtor. Only then is the creditor entitled to sue for a deficiency. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex.1982).

In *Tanenbaum*, the Texas Supreme Court held that the purpose of sections 9.504 and 9.505 'was to put the creditor to an election to either sell the repossessed collateral pursuant to Section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to Section 9.505.' *Id.* at 772. *Accord Knight v. General Motors Acceptance Corp.*, 728 S.W.2d 480, 483 (Tex.App.—Fort Worth 1987, no writ).

■ The disposition of the collateral here did not meet *Tanenbaum's* requirements. G.E. did not make an election; it retained the collateral and then, in addition, sued for the entire debt. G.E. circumvented the protections afforded debtors under article 9: instead of giving notice of sale before suing, it sued before giving notice; instead of providing summary judgment proof that the sale was conducted in a commercially reasonable manner, it filed a credit to the judgment. The *Tanenbaum* court warned that similar conduct threatened to deprive debtors of the code's express protections. 628 S.W.2d at 772.

■ We hold that the burden of proving notice of sale and commercially reasonable disposition of collateral is properly upon the secured party because it 'has a better knowledge of the facts surrounding (its) disposition of the collateral than has the debtor. Furthermore, in an action for a deficiency, the secured party is the party seeking relief, and should bear the burden of justifying the recovery (it) claims under the U.C.C.' *Sunjet Inc. v. Ford Motor Credit Co.*, 703 S.W.2d at 287. G.E. did not carry this burden.

*Carroll, supra* at 155.

### Bank One's Debt Was Subject to a Bona Fide Dispute

■ The only potential defense to Bank One's claim arises because of Bank One's retention of the collateral and suing for the full debt. When the State suit was filed on March 6, 1991, Bank One did not have complete possession of its remaining collateral. However, when it filed its amended petition on April 4, 1991, it had possession of its remaining collateral and still did not, in such amended complaint, specifically ask for judicial foreclosure of its collateral, or private or public UCC sale of same, nor did it ever issue any UCC notices of sale. In both State Court petitions, it attached copies of the Bank One Security Agreement, and both petitions contained general prayers for relief. In both the original and amended petitions, Bank One pled that all offsets and credits had been allowed.

In correspondence before the suit, Bank One had indicated an intent to utilize its full rights and remedies under the U.C.C.

After receiving Norriss' response to the involuntary petition, Bank One apparently finally focused on the *Tanenbaum* point raised by Norriss, and by letter of June 12, 1991 (Norriss' Exhibit 14), Bank One's attorneys stated:

In NBLC's Response to Involuntary Petition Under Chapter 7 you state that '[b]ecause of acts and omissions of Bank One, the indebtedness of Respondent to Bank One was satisfied, in that Bank

One accepted its collateral in satisfaction of the debt ...'. Bank One has never accepted the collateral pledged to it by NBLC in satisfaction of the indebtedness of NBLC or the guarantors, C.E. Norriss, Jr. and Gary Norriss. To the contrary, it has always been Bank One's intent to sell the collateral, after repossession, and pursue recovery of the remaining deficiency from NBLC and the guarantors. As you should know, Bank One has pursued this plan from the outset, when it filed its action to recover on the debt against NBLC and the guarantors, while at the same time seeking to recover possession of the NBLC inventory so that it might be sold.

Because of the pending involuntary petition under Chapter 7, naming NBLC as the debtor, and the automatic stay arising from that filing, Bank One has not yet sold the subject inventory. Please be advised, however, that after the entry of an order of relief in the bankruptcy, Bank One intends to ask the bankruptcy court to lift the stay so that Bank One may proceed with a sale of the subject inventory. In addition to pursuing foreclosure of the collateral, Bank One intends to continue with its efforts to recover the deficiency, which will exist after foreclosure, from NBLC and the guarantors.

If the State Court Action is viewed under the *Stroop* summary judgment standard, or the *Lough* standard, it appears that genuine issues of material fact exist that bear upon Norriss' liability to Bank One, to wit:

> Did Bank One's retention of the collateral constitute a retention of the collateral under Tex.U.C.C. § 9.505 (and, therefore, a *Tanenbaum* satisfaction of the debt), with retention being defined in terms of a possible holding for an unreasonable length of time without a notice of sale? [3] *Cohen v. Rains,* 769 S.W.2d 380, 386–387 (Tex.App.—Fort Worth 1989, writ denied) (*citing* W. Mike Bag-

gett, *Texas Foreclosure Law & Practice,* 807–810 (1984), and Annotation, *Construction and Operation of UCC sec. 9.505(2) Authorizing Secured Party in Possession of Collateral to Retain it in Satisfaction of Obligations,* 55 A.L.R.3d 651 (1974 and Supp.1988)).

In fact, other jurisdictions which have considered this issue have consistently held that an election can be implied from an unreasonably prolonged retention of the collateral by the secured party, and that the determination of what constitutes an unreasonable period of time is a question for the trier of fact. *Swanson v. May,* 40 Wash.App. 148, 697 P.2d 1013 [41 UCC Rep.Serv. 274] (1985); *Millican v. Turner,* 503 So.2d 289 [3 UCC Rep.Serv.2d 887] (Miss.1987); *Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745 [39 UCC Rep. Serv. 1151] (Ind.Ct.App.1984); *H.V. Funding, Inc. v. Ernes Vakkas & Sons, Inc.,* 140 Misc.2d 587, 531 N.Y.S.2d 484, 6 UCC Rep.Serv.2d 1004 (N.Y.Civ.Ct.1988) (Retention of collateral six months prior to initiating suit to collect debt constituted an election to keep repossessed equipment in satisfaction of debt. Deficiency claim forfeited.); *Moran v. Holman,* 514 P.2d 817 [13 UCC Rep.Serv. 206] (Alaska 1973) (retention of collateral, a truck, for a period of four months prior to initiating suit on debt, discharged debtor from further liability on debt); *Bradford v. Lindsey Chevrolet Co.,* 117 Ga.App. 781, 161 S.E.2d 904 [5 UCC Rep.Serv. 558] (1968) (secured party's retention of collateral for period of fifty days after repossession, before commencing suit on contract, and sixteen months from time of filing suit to time of trial, barred recovery of deficiency); R. Anderson, 4 *Uniform Commercial Code* § 9–505:5 (2d ed. 1971) (retention of property for excessive period of time without disposing of it may preclude deficiency).

Thus, without reaching the ultimate merits of the parties' claims, Norriss' defense

---

**3.** This Court previously found, at p. 6, that Bank One's collateral is worth substantially less than what Bank One is owed. If should be kept in mind that the State Court Action is in its preliminary stages from a discovery standpoint, nor were the facts exhaustively developed in this Court, as is appropriate. If the *Tanenbaum* issue were not in this case, then, under a § 506–type analysis, the Court could have found that a portion of Bank One's debt was valid for purposes of Bank One being a *bona fide* creditor within the meaning of § 303(b)(1) since only part of its debt is secured.

to Bank One's claim is not frivolous. Bank One was aware, or should have been aware, of this when it filed the involuntary petition. Thus, objectively, this was a bad faith filing by Bank One.

### *Whether Defective Petition Cured by Interventions*

■ When an original petition is filed in bad faith, intervention of a good faith creditor does not normally purge the taint of the original creditor's bad faith in filing. *Basin Elec. Power Co-op. v. Midwest Processing Co.*, 769 F.2d 483 (8th Cir.1985), *cert. denied* 474 U.S. 1083, 106 S.Ct. 854, 474 U.S. 1083 (1986) (dismissal of involuntary petition warranted as bad faith filing where sole petitioning creditor knew debtor had in excess of twelve creditors, but nevertheless filed a petition in violation of statutory requirement. Creditor's fraudulent attempt to confer bankruptcy jurisdiction barred intervention by other creditors to cure defective petition.) *In re Centennial Ins. Assoc., Inc.*, 119 B.R. 543 (Bankr. W.D.Mich.1990); *In re Eberhart Moving & Storage Ltd.*, 120 B.R. 121 (Bankr. D.N.D.1990); *In re Coppertone Communications, Inc.*, 96 B.R. 233 (Bankr. W.D.Mo.1989); *In re Caucus Distributors, Inc.*, 106 B.R. 890 (Bankr.E.D.Va.1989); *In re LaRoche*, 131 B.R. 253 (D.R.I.1991).

In the case of *In re Centennial Ins. Assoc. Inc., supra,* the court had before it a similar situation as exists in this case. The *Centennial* court stated:

> ... The Eighth Circuit's holding [in *Basin, supra*] stands for the proposition that the intervention of a subsequent good faith creditor does not remove the taint of an original bad faith petitioning creditor. In the case before me, Commercial Union is no longer a petitioning creditor, and three good faith creditors remain. Nevertheless, the Eighth Circuit's statement rings true: 'The three creditor requirement is not a meaningless formality....' *Id.* at 486.

These cases clearly demonstrate that bad faith filings of involuntary petitions are not to be permitted. The impact on a debtor of the filing of an involuntary petition is severe, and should be permitted only when the statutory requirements of 11 U.S.C. § 303 are met. To allow an involuntary petition to proceed otherwise would be judicially irresponsible, and would set a dangerous precedent.

> .... [E]ven though the dismissal of the involuntary petition may appear to 'punish innocent creditors,' the policy of discouraging bad faith filings is paramount. The supposition that the three remaining creditors may turn around and refile the case is largely irrelevant. If that occurs, their petition will be judged on its merits ...

*In re Centennial Ins. Assoc., Inc.*, 119 B.R. at 546–547.

The Fifth Circuit itself has acknowledged that the jurisdictional prerequisites for filing an involuntary bankruptcy proceeding constitute more than mere formalities. In *In re Walden*, 781 F.2d 1121 (5th Cir.1986), the Fifth Circuit admonished: "An allegation of bankruptcy invokes remedies not available to any ordinary debt collection procedures. It should not be invoked unadvisedly and contrary to statutory right." *Walden, Id.* at 1123.

Absent the existence of an exception to the three creditor requirement, this Court would be bound to dismiss this involuntary proceeding based on Bank One's bad faith attempt to confer jurisdiction on this Court.

The Fifth Circuit has summarily affirmed a decision in which disputed debts were excluded from the § 303(b)(1) calculation:

> ... [T]he court believes that where a debtor fails to pay a debt which is subject to a bona fide dispute that debt should not be considered a debt which has not been paid as it became due. There is no apparent reason why a debtor should have to pay disputed debts to avoid the entry of an order of relief ...

*In re All Media Properties, Inc.*, 5 B.R. 126, 144 (Bankr.S.D.Tex.1980) *aff'd* 646 F.2d 193 (5th Cir.1981).

### *Whether There is a Special Circumstance Exception to the Three Creditor Requirement Applicable in This Case*

■ Some cases have suggested that the three creditor requirement may not be

applicable in the event of trick, artifice, scam, or fraud. *Matter of Wagner,* 53 B.R. 93 (Bankr.W.D.Wis.1985); *In re Fales,* 73 B.R. 44 (Bankr.S.D.Ohio 1987); *In re Arker,* 6 B.R. 632 (Bankr.E.D.N.Y.1980); *In re 7H Land & Cattle Co.,* 6 B.R. 29 (Bankr.D.Nev.1980). *Also see, 2 Collier on Bankruptcy* ¶ 303.07 p. 303–20 (15th ed. 1991); *In re Concrete Pumping Service, Inc.,* 943 F.2d 627 (6th Cir. (Tenn.1991)) (which has some facts very similar to those in this case); *In re H.I.J.R. Properties Denver,* 115 B.R. 275 (D.Col.1990); *In re Blain Richards & Co.,* 16 B.R. 362, 365–366 n. 4 (Bankr.E.D.N.Y.1982).[4]

The arguable fraudulent conveyances and arguable preferential transfers to Norriss' attorneys and others constitute special circumstances within the meaning of *Matter of Wagner, In re Fales, In re Arker, In re 7H Land & Cattle Co.,* and *In re Concrete Pumping Service, Inc.,* and an order for relief should be entered. Bank One has demonstrated the special circumstances for granting of the relief in this involuntary proceeding, and justifying departure from the three creditor requirement. See, for example, the findings on pp. 601–03.

---

[4] One court has questioned whether the alleged exception is applicable to the three creditor requirement as opposed to being applicable on the issue of whether the debtor is generally not paying its debts pursuant to § 303(h)(1). *In re Eberhart Moving & Storage Ltd.,* 120 B.R. 121, 122 (Bankr.D.N.D.1990).