**In re EQUIDYNE PROPERTIES, INC., Debtor.**

**No. 84 B 11373 (PBA).**

United States Bankruptcy Court, S.D. New York.

April 18, 1986.

Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., to petitioners; Nathan B. Feinstein, and Alan C. Kauffman, of counsel.

Munves, Tanenhaus & Storch, New York City, to petitioners; Steven G. Storch, of counsel.

Wofsey, Certilman, Haft, Lebow & Balin, New York City, to debtor; Martin F. Brecker, John J. Preefer, and Jeffrey W. Levitan, of counsel.

## DECISION AND ORDER DISMISSING INVOLUNTARY PETITION

PRUDENCE B. ABRAM, Bankruptcy Judge:

On October 1, 1984 an involuntary petition under Chapter 7 of the Bankruptcy Code (the "Code") was filed against Equidyne Properties, Inc. ("Properties" or "Debtor"). The Petitioners were Max M. Koppel ("Koppel"), Salvatore J. Stile ("Stile"), Pearl W. Perlmutter ("Perlmutter") (through power of attorney given to Sanford Goldberg), Mayer Horowitz ("Horowitz") and A. Anthony Martino ("Martino") (collectively referred to as the "Petitioners"). Petitioners Koppel, Stile, and Perlmutter are limited partners of 1981 Equidyne Properties–I ("Equidyne–I"); Petitioners Horowitz and Martino are limited partners of 1981 Equidyne Properties–II ("Equidyne–II") (collectively Equidyne–I and Equidyne–II are hereafter referred to as the "Partnerships"). Properties is the general partner of the Partnerships. Both of the Partnerships, each of which owns a single piece of real property, are themselves debtors in voluntary Chapter 11 cases.

This case is still in the pre-answer stage. Prior to answer and by notice of motion dated October 21, 1984, Properties has sought an order dismissing the involuntary petition on the grounds the Petitioners have failed to state a claim upon which relief may be granted because the Petitioners are not creditors of the Debtor. The Petitioners opposed the motion and have also made a cross-motion for summary judgment and the entry of an order for relief.

Properties refers only to Rule 12 of the Federal Rules of Civil Procedure in its motion. Rule 12(b), made applicable by Bankruptcy Rules 1011(b) and 7012(b), permits seven different defenses to be raised by motion prior to answer. It makes a significant difference which of the Rule 12(b) defenses is relied on when a motion is made prior to answer. Only a pre-answer Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted can be converted to a motion for summary judgment.[1] See 5 Wright & Miller, Federal Practice & Procedure, Civil § 1366. Technically a Rule 12(b)(6) motion does not attack the merits of the case; it merely challenges the pleader's failure to state a claim properly. On a pre-answer Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the court may not consider matters outside the pleading and is limited to the facial sufficiency of the pleading. See *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492 (Bankr.S.D.N.Y.1985) (Abram, B.J.). There is substantial interrelationship between Rule 12(b)(1) and 12(b)(6) motions relative to involuntary petitions. See *In re Onyx Telecommunications, Ltd., supra.* It appears that the Debtor intended to rely on Rule 12(b)(6) as its motion refers to failure to state a claim for relief. Because the issues raised are legal in nature, this court finds it appropriate in this case to convert Properties' motion to a Rule 56 summary judgment motion, particularly in light of the Petitioners' cross-motion for summary judgment in their favor.

The claims the Petitioners seek to assert are based upon the following provisions of the Equidyne–I and II partnership agreements:

"[I]n the event the Net Cash Flow in any year is less than zero, the General Partner shall pay the deficiency to the Part-

---

**1.** The last sentence of Rule 12(b) provides:
"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

nership on or before the 60th day following the close of the fiscal year ..." (¶ 10–n, Equidyne–I Partnership Agreement).

"[T]o the extent Net Cash Flow in any year prior to 1987 is less than zero, the General Partner will advance the deficiency to the Partnership ..." (¶ 10–m, Equidyne–II Partnership Agreement).

The Petitioners allege that during fiscal year 1983 both Equidyne–I and Equidyne–II experienced a "substantial" negative cash flow. The Petitioners further allege that no advances for these deficiencies have been made by Properties to either Equidyne–I or Equidyne–II since their Chapter 11 petitions were filed on August 16, 1983 and July 15, 1983, respectively. The Petitioners assert that their status ·as limited partners of Equidyne–I and Equidyne–II allows them to assert a claim on behalf of the partnerships for Properties' alleged failure to advance payments in satisfaction of the negative cash flows.

■ At the outset, the court notes that the Petitioners have failed to allege that their claims are not the subject of a bona fide dispute. This allegation is required by Bankruptcy Code § 303(b)(1), which as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") now provides as follows:[2]

"(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—

"(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if

such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

In light of the liberal amendment policy in the federal system it would serve no useful purpose for this court to decline to rule on the present motions because of this pleading defect.

The Petitioners urge the court to find that Properties' obligations to Equidyne–I and II are enforceable by the limited partners in that they fall within the definition of "claim" provided by Code § 101(4).[3] The Petitioners assert that they are not merely relying on their rights as equity security holders of the Partnerships, but rather that their claims arise from promises made directly to themselves, as limited partners, in the partnership agreements. Petitioners argue that Properties' failure to make the payments necessary to offset the alleged negative cash flows in 1983 constituted a breach of promises made directly to the limited partners, thus creating a debt running from Properties to the limited partners. The Petitioners argue that the fact that Properties promised to make payment to the Partnerships rather than to the limited partners themselves is irrelevant since the limited partners are the ultimate beneficiaries of the promises. ·

Properties, on the other hand, asserts that the Petitioners are not in fact creditors of the Debtor and argues that its obligation, if any, is owed to the Partnerships not to the individual limited partners. The Debtor further states that the Petitioners, as limited partners, have no standing or authority to enforce Properties' covenant to advance a deficiency in the cash flows to the Partnerships. Properties further urges

---

**2.** The amendment to Bankruptcy Code § 303(b) applies to petitions filed on or after the date of enactment, July 10, 1984, of BAFJA, Pub.L. 98–353 § 553(b), 98 Stat. 330, 392 (see 9 Bankr. Serv. L.Ed. Supp. at 66).

**3.** The Bankruptcy Code defines "claim" as a:
"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unma-

tured, disputed, undisputed, legal, equitable, secured, or unsecured; or
"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured * * *."

that the limited partners have only an equity security interest in the limited partnership. Properties would have the court hold that the Petitioners can assert no debt that runs directly to themselves.

The Debtor further argues that even if the court denies its motion to dismiss, there exist material facts in dispute precluding the entry of summary judgment in favor of the Petitioners. Properties asserts that Equidyne–I did not experience a negative cash flow in fiscal year 1983, and that even if Equidyne–I had a negative cash flow in that year, payment by the Debtor to the partnership would have been excused due to Properties' failure to make a required $200,000 payment in consideration for a guarantee of the cash flow.[4] In addition, Properties asserts that rather than experiencing a negative cash flow in fiscal year 1983, Equidyne–II had a positive cash flow for fiscal year 1983.

Summary judgment is appropriate only when there is no genuine "issue as to any material fact and the moving party is entitled to judgment as a matter of law." *In the Matter of Iota Industries, Inc.*, 35 B.R. 693, 695 (Bankr.S.D.N.Y.1983); see also *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980); *Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714, 717 (2d Cir. 1984); *Federal Rules of Civil Procedure 56(c)*. In determining whether to grant a summary motion the court "must resolve all doubts in favor of the party opposing the motion." *In the Matter of Iota Industries, Inc.*, 35 B.R. at 695; *See also Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

■ The court is of the view it must grant summary judgment in favor of the Debtor. The *sine qua non* of an involuntary petition is that the petitioners hold a claim "that is not contingent as to liability or the subject of a bona fide dispute." In order to hold a claim, a petitioner must either possess a "right to payment," Code § 101(4)(A), or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," Code § 101(4)(B). The Code does not explicitly state whether the right to payment must run directly to the claimant. At least some authority supports the proposition that it need not. For example, a labor union has been held to have a claim, at least for the purpose of appointment to the unsecured creditors' committee, even though it collects wages for the purpose of passing them through to its members. See *In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984).

■ The Official Limited Partners' Committees of Equidyne–I and Equidyne–II have the authority, and the duty, to represent the interests of the various limited partners of the respective Partnerships. The Petitioners do not comprise all of the limited partners, nor do they purport to act with the consent or on behalf of all the limited partners. The Petitioners have advanced no authority, either by virtue of the partnership agreements, statute, or the common law, which would permit the court to hold that these individual limited partners have the authority, and hence standing, to assert claims of the Partnerships by filing an involuntary petition against the general partner. The actions of the individual limited partners in this case are particularly circumscribed by the fact that both of the Partnerships are debtors in pending bankruptcy proceedings. The causes of action the Petitioners seek to enforce constitute property of the estates of the respective Partnerships in their Chapter 11 cases. See Code § 541.

Thus the Partnerships, not the Petitioners, appear to be the holders of the claims the Petitioners assert. Accordingly, it would appear to be the province of the trustee or someone authorized to act on the estate's behalf to pursue the claims against the general partner. In a somewhat different context, this court has held that the

---

**4.** Properties also states that certain payments made to Barclay's Bank and Republic National Bank would have satisfied any obligation to pay the amount of a negative cash flow, if one indeed existed and was enforceable.

pendency of bankruptcy proceedings regarding related corporate debtors deprived the petitioners of the standing to file an involuntary petition based on an alleged fraudulent conveyance from the related corporate debtors to the involuntary debtors. See *In re Drexler Associates, Inc., et al.,* 57 B.R. 312 (Bankr.S.D.N.Y.1986). This court held that "[u]pon the entry of orders for relief against the Original Corporate Debtors, their trustee became vested with all rights to set aside fraudulent conveyances that had previously belonged to their creditors, whether or not reduced to judgment." *In re Drexler Associates, Inc., et al.,* 57 B.R. at 315.

The claims of the Petitioners can be viewed in two lights. The first is one in a representative capacity in which they seek to enforce claims that run to the Partnerships. The second is in an individual capacity in which they seek to enforce claims that run directly to themselves. An example of a claim in the Petitioners' individual capacity would be one for damage or injury to the value of their partnership interests caused by Properties' alleged failure to make the requisite payments to the Partnerships. This second type of claim appears to be both contingent and highly speculative. It is dependent, *inter alia,* on Properties' ultimate liability to the Partnerships, a finding that Properties failed to make the required payments as well as a finding that such claim has legal merit. In addition, the extent of any reduction in the value of the limited partnership interests is unavoidably affected by and integrally related to the Partnerships Chapter 11 cases and litigation pending therein. In *In re All Media Properties, Inc.,* 5 B.R. 126 (Bankr. S.D.Tex.1980), *aff'd* 646 F.2d 193 (5th Cir. 1981), the court held that:

> "[C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger to liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor

and creditor at the time the event giving rise to the claim occurred." *In re All Media Properties, Inc.,* 5 B.R. at 133. Thus, the court could take the view that the Petitioners do hold claims but that the claims are contingent. But see *In re Longhorn 1979–II Drilling Program,* 32 B.R. 923 (Bankr.W.D.Okla.1983). This would be a fatal bar to the entry of an order for relief against Properties.

Despite the multiplicity of petitions related to this case, the court must still consider this petition on its individual merits. This case fits into no general category regarding the disputes usual in involuntary cases. Congress added the bona fide dispute language to Code § 303 by BAFJA in response to developing case law which had reflected an increasing latitude in the ease of commencement of involuntary cases. This court has previously said that the simplicity of the "bona fide dispute" language is deceptive. See *In re William R. Drexler,* 56 B.R. 960, 966 (Bankr.S.D.N.Y.1986). Here there appears to be a bona fide question about the liability of the Debtor to these Petitioners which renders the involuntary petition fatally defective. Compare *In re Lough,* 57 B.R. 993, 14 B.C.D. 114, 116 (Bankr.E.D.Mich.1986) ("The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.") The court takes no position regarding other legal avenues the Petitioners may have to enforce any obligations of Properties to them or the Partnerships.

Since the court has determined that summary judgment must be granted in favor of Properties, the Petitioners' motion for summary judgment must necessarily be denied. The court hereby dismisses the involuntary petition.

It is so ordered.