NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MARTIN MUSONGE,<br>         Debtor. | BAP No. NC-20-1184-SGB<br><br>Bk. No. 19-42596 |
| NATHANIEL BASOLA SOBAYO,<br>         Appellant,<br>v.<br>HIEN THI NGUYEN; ROBERT K. LANE;<br>DANIEL BUTT; KHIEM NGUYEN;<br>AVALON NGUYEN GARDNER LIVING<br>TRUST; HONG JACQUELINE<br>GARDNER; MARTIN MUSONGE,<br>         Appellees. | **MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Charles D. Novack, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

---

<sup>*</sup> This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

# INTRODUCTION

Nathaniel Basola Sobayo filed an involuntary chapter 7[1] petition against Martin Musonge. The bankruptcy court granted summary judgment in favor of Musonge and dismissed the case. Sobayo appeals.

Sobayo is no stranger to litigation. The focus of most of this litigation is a residence formerly owned by Musonge. According to Sobayo, multiple injustices have occurred that wrongfully have deprived him of his interest in the residence. The same property is at the forefront of this appeal as well. Sobayo again asks this Panel to fix these perceived injustices. But most of his grievances are beyond the limited scope of this appeal.

Here, the bankruptcy court granted summary judgment and dismissed the involuntary petition. It did so because Sobayo's claim was subject to bona fide dispute and, therefore, Sobayo did not qualify under § 303(b) as a petitioning creditor.

We agree, so we AFFIRM.

# FACTS[2]

Unless otherwise indicated, the following facts are undisputed. Many of them are drawn from our prior decision in *Sobayo v. Musonge (In re Musonge)*, BAP No. NC-20-1060-BKT, 2021 WL 799688 (9th Cir. BAP Mar. 1,

---

[1] Unless specified otherwise, chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re*

2021). On May 12, 2017, Sobayo's wholly-owned limited liability company Kingsway Capital Partners, LLC ("Kingsway") purchased Musonge's residence located in Richmond, California. Kingsway financed its purchase by borrowing $580,000 from Hien Thi Nguyen. The $580,000 note was secured by a deed of trust against the residence.

After Kingsway's purchase, Musonge continued to occupy the residence. But he never paid any rent to Kingsway.

Sobayo maintains that he initially made roughly eight payments on the loan secured by the residence. But he soon stopped making payments. In turn, Nguyen initiated foreclosure proceedings. In an apparent effort to forestall Nguyen's foreclosure proceedings, Sobayo initiated both state court litigation and a series of bankruptcy filings on behalf Kingsway and himself. The first of these filings was the chapter 11 petition he filed on behalf of Kingsway on October 31, 2018. Shortly after the bankruptcy court dismissed the Kingsway bankruptcy, Sobayo purported to transfer a 95% interest in the residence from Kingsway to himself.

Notwithstanding the bankruptcy filings, Nguyen succeeded in foreclosing on Kingsway's 5% interest in the residence on May 1, 2019. She then foreclosed on Sobayo's 95% interest in the residence on July 3, 2019. As of July 11, 2019, a trustee's deed was recorded, thereby giving Nguyen legal title to a 100% interest in the residence.

---

*Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

Nguyen then commenced an unlawful detainer action against Musonge. On the eve of trial in that matter, Sobayo, proceeding pro se, filed the involuntary chapter 7 petition against Musonge. In the petition, Sobayo based his petitioning creditor status on two claims. First, he alleged that Musonge owed him $770,677 as a "Consumer Debt Owed Value of Mortgage Liabilities re Conversion and Possession after sale of Property by Debtor . . . ." ("Mortgage Claim".) And second, he alleged that Musonge owed him $105,000 in "Rental Income unpaid 30 months after [Kingsway's] purchase of Property @ $3,500.00 [per month]"("Rent Claim").

Musonge, also appearing pro se, filed his answer and motion to dismiss. He noted that he sold the residence to Kingsway — not Sobayo — in May 2017. He further pointed out that, as a result of Nguyen's foreclosure proceedings, neither Kingsway nor Sobayo had any remaining ownership interest in the residence.

Sobayo responded to the motion to dismiss. In relevant part, he reiterated his Rent Claim. He also indicated that Nguyen's and Musonge's alleged acts of fraud and conversion were part of a concerted effort by them to wrongfully deprive him of the residence.

After a hearing on the motion to dismiss the court determined that the parties' papers referenced evidence and went beyond the scope of what was alleged in the pleadings. Consequently, the court treated Musonge's motion to dismiss as a summary judgment motion under Civil Rule 12(d)

and gave the parties the opportunity to present additional argument and evidence.[3]

Sobayo filed a supplemental declaration and brief, elaborating on his Mortgage Claim and his Rent Claim. According to Sobayo, the Mortgage Claim consisted of all amounts claimed by Nguyen under the $580,000 note and deed of trust. That amount, claimed Sobayo, was $770,677, exclusive of punitive damages, sanctions, accruing property taxes, and other charges. As Sobayo broadly explained, Musonge's liability for the Mortgage Claim arose from his "Conversion and Possession" of the residence after he sold it to Kingsway.

Sobayo acknowledged that Musonge sold the residence to Kingsway in May 2017. Nonetheless he maintained that he (rather than Kingsway) was the holder of the Mortgage Claim because, Sobayo reasoned, he and Kingsway are one and the same under the law.

As for the Rent Claim, Sobayo maintained that it had grown since the time of the filing of the involuntary petition —at a rate of $3,500 per month — from $105,000 to $129,000. In stating his Rent Claim, Sobayo did not account for Kingsway's 100% ownership of the residence from May 12, 2017 to November 15, 2018. Nor did he account for the fact that, between November 15, 2018, and July 11, 2019, he only purported to hold a 95% interest in the residence. And as of July 11, 2019, when the trustee's deed

---

[3] Rule 1011(b) generally makes Civil Rule 12 applicable to involuntary petitions. The Rule in part provides that, "[d]efenses and objections to the petition shall be

5

was recorded in Nguyen's favor, Sobayo ceased to hold any ownership interest in the property.

Sobayo submitted some exhibits in support of his Rent Claim. These exhibits include: (1) a "California Residential Lease Agreement" dated July 1, 2019; (2) a "Residential Lease Agreement With Option To Purchase" dated September 14, 2019, also identified in handwriting as "Addendum 1"; and (3) a "Special Attachment to Written Lease" dated September 14, 2019, also identified as "Addendum 2." The Special Attachment-Addendum 2 is entirely handwritten, though the words "Addendum 2" appear to differ from the rest of the document. Each of these documents purport to be between Sobayo and Kingsway as landlords and Musonge as the tenant or occupant. The documents also purport to contain the signatures of Musonge and his wife, as well as Sobayo's on behalf of himself and Kingsway. It is difficult to discern what obligations (if any) Musonge might have committed himself to, assuming he signed the three documents.

In June 2019, Musonge filed his supplemental brief and declaration in support of his summary judgment motion. He argued that the lease documents were not authenticated. But he also attacked the lease on other grounds. According to Musonge, Sobayo's own briefs and evidence established that the Mortgage Claim and the Rent Claim were both subject to bona fide to dispute. More specifically, he claimed that the lease

---

presented in the manner prescribed by Civil Rule 12." Fed. R. Bankr. P. 1011(b).

documents on which Sobayo relied were internally inconsistent and that the various effective dates stated in the documents made no sense.

Finally, Musonge contended that any rent he might have owed was owed to Kingsway and not to Sobayo. He described Kingsway as a "defunct" company. To support this contention, he filed a request for judicial notice and attached a copy of what he describes as a record from the California Secretary of State, which describes Kingsway's status as "FTB Forfeited."

On July 20, 2020, after considering all the papers submitted by the parties, the court entered an order granting summary judgment in favor of Musonge and dismissed the involuntary petition. Sobayo timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it entered summary judgment dismissing the involuntary petition?

## STANDARD OF REVIEW

This appeal hinges on the bankruptcy court's summary judgment determination that a bona fide dispute existed as to Musonge's liability to Sobayo and the amount of any such liability. Whether a bona fide dispute exists for purposes of § 303(b) ordinarily is considered a question of fact reviewed under the clearly erroneous standard. *See Marciano v. Fahs (In re*

*Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013) (citing *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir. 2002)). However, when the bona fide dispute is determined by summary judgment, we review the bona dispute determination de novo. *Id.* When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Id.* at 34 (citing *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006)).

## DISCUSSION

**A.    Governing legal standards.**

**1.    Summary judgment.**

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). For summary judgment purposes, material facts are those which may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, substantive law determines which facts are material. *Id.* An issue is considered genuine and will bar entry of summary judgment if a reasonable factfinder could find in favor of the non-moving party. *Id.*; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

Civil Rule 56 requires courts to enter summary judgment if the non-moving party fails to present evidence in response to the summary

8

judgment motion sufficient to support the existence of an essential element of that party's case, on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. As the *Celotex* court observed: "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23; *see also Havens v. Leong (In re Leong P'ship)*, Case Nos. NC–17–1015–STaB & NC-17-1034-StaB, 2018 WL 1463852, at *7 (9th Cir. BAP Mar. 23, 2018), *aff'd*, 788 F. App'x 539 (9th Cir. 2019) ("When, as here, the non-moving party would bear the burden of proof at trial to establish an essential element of his or her case, the moving party can meet his or her summary judgment burden by pointing to the absence of evidence to support an essential element of the non-moving party's claim.").

2.    **Bona fide dispute.**

As § 303(b)(1) specifies, the claim of each petitioning creditor must be neither contingent as to liability nor subject to "bona fide dispute as to liability or amount." Imposing this burden on petitioning creditors protects debtors by preventing creditors whose claims are subject to legitimate dispute from filing spurious involuntary petitions for the purpose of coercing a favorable resolution of their claims. *See Chicago Title Ins. Co. v. Seko Inv., Inc. (In re Seko Inv., Inc.)*, 156 F.3d 1005, 1007-08 (9th Cir. 1998); 2 Collier on Bankruptcy ¶ 303.11 (16th ed. 2021).

The Ninth Circuit has held that the absence of a bona fide dispute is an affirmative element that each petitioning creditor must demonstrate in order to sustain their involuntary petition. *Rubin v. Belo Broad. Corp. (In re Rubin)*, 769 F.2d 611, 615 (9th Cir. 1985). Accordingly, the petitioning creditor(s) bear the burden of proof to establish that no bona fide dispute exists. *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1064; *see also In re Rubin*, 769 F.2d at 615 ("Petitioning creditors cannot prevail unless they show that their claims are not subject to bona fide disputes.").

A claim is subject to bona fide dispute when "there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1064 (citing *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). In other words, "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." *Id.* (quoting *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). Importantly, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much." *Id.*

**B.    Sobayo's arguments.**

Sobayo's appeal brief is difficult to comprehend. Much of it is devoted to his historical account of his years of interaction with, and litigation against, Musonge and Nguyen. Most of his discussion has little or

10

no relevance to the controlling issue presented by his current appeal: whether his claims against Musonge are subject to bona fide dispute. Given the limited scope of this appeal, our review is constrained to whether his Mortgage Claim and his Rent Claim are subject to bona fide dispute. We will address each claim in turn.

**1.      The Mortgage Claim is subject to bona fide dispute.**

Sobayo's Mortgage Claim is founded on his allegation that, at the time Kingsway purchased the residence, Musonge "converted" it by continuing to occupy the premises. Consequently, Sobayo maintains that at the time he filed the involuntary petition, Musonge was liable for at least $770,677, comprised of all costs, expenses, and damages Kingsway incurred as a result of its purchase of the residence, including the mortgage obligations owed to Nguyen.

There are a number of very basic problems with Sobayo's Mortgage Claim. The most problematic of these is that the California tort of conversion only applies to personal property and not to real property. *Salma v. Capon*, 161 Cal. App. 4th 1275, 1295 (2008). In addition, even if a claim for conversion was available, nothing in the record establishes any causal link between the alleged "conversion" and the mortgage-related costs and expenses Kingsway incurred to purchase the property.

Finally, any cause of action for conversion accrued when Musonge remained on the property after Kingsway purchased it. *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, Case No. C 07-935 JF (HRL),

11

2009 WL 1513390, at *3 (N.D. Cal. May 29, 2009), *aff'd*, 400 F. App'x 250 (9th Cir. 2010) ("[I]t is well-settled that a property owner's claim for conversion ordinarily accrues when the conversion occurs, even if the owner is ignorant of the wrong committed." (citing *Naftzger v. Am. Numismatic Soc'y*, 42 Cal. App. 4th 421, 429 (1996))). Any such cause of action, therefore, would belong to Kingsway. Nothing in the record demonstrates that Sobayo had any claim for conversion against Musonge when he filed the involuntary petition.

Sobayo attempts to overcome this obstacle by arguing that there is no legal difference between him and Kingsway. He is mistaken. As we have held, "a limited liability company is a separate and distinct legal entity from its owners or members. Consequently, limited liability company members have no interest in the company's assets." *Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, 623 B.R. 777, 783 (9th Cir. BAP 2020) (citations omitted). In effect, Sobayo is asking us to recognize his Mortgage Claim by disregarding Kingsway's separate legal existence. However, "[a]lter ego principles almost never enable 'the persons who actually control the corporation to disregard the corporate form.'" *Id.* at 785 (quoting *Capon v. Monopoly Game LLC*, 193 Cal. App. 4th 344, 357 (2011)). Nor did Sobayo make any showing in the bankruptcy court that would implicate any of the narrow exceptions to this rule. *See id.*

At bottom, there is no genuine issue that Sobayo's Mortgage Claim is subject to bona fide dispute.

12

**2.   The Rent Claim is subject to bona fide dispute.**

Sobayo also contends that, at the time he filed the involuntary petition, Musonge was liable to him for 30 months of rent at $3,500 per month, or $105,000. In support of this Rent Claim, Sobayo submitted three lease documents from July 1, 2019 and September 14, 2019, listing Kingsway and himself as the landlord. The bankruptcy court determined that Musonge disputed both his liability and the amount of the Rent Claim. The record demonstrates numerous bona fide disputes as to both.

**a.   Sobayo's authority to enter any lease agreement.**

Significantly, it was **Kingsway** that purchased Musonge's residence in May 2017. Sobayo had no interest in the real property until Kingsway purportedly transferred 95% of its interest to Sobayo on November 15, 2018. But even then, Sobayo's interest in the property is disputed.

As an initial matter Musonge submitted evidence that the California Franchise Tax Board ("FTB") revoked Kingsway's status as an active limited liability company in good standing because it failed to pay taxes. Among other consequences, a suspended or forfeited limited liability company "shall not be entitled to sell, transfer, or exchange real property in California during the period of forfeiture or suspension." Cal. Rev. & Tax. Code § 23302(d). Sobayo has admitted that he currently lacks the financial means to revive Kingsway. Consequently, as of filing of the involuntary petition, Musonge contests Kingsway's transfer to Sobayo of a 95% ownership interest in the residence.

13

Musonge also challenged the lease documents submitted by Sobayo. Musonge pointed out that the earliest document was dated **after** Nguyen had foreclosed on Kingsway's interest in the residence and two days **before** she foreclosed on Sobayo's interest. Musonge disputed Kingsway's ability to participate in any agreement concerning the lease of the residence after its interest had been foreclosed. The same question applies equally to Sobayo's interest, which was foreclosed well before the additional documents were purportedly signed on September 14, 2019.

Once again, Sobayo's briefing, both in the bankruptcy court and on appeal, fails to address these issues. Under California law, upon foreclosure Nguyen stepped into the shoes of Sobayo and Kingsway and became the successor landlord under the lease. *See Nativi v. Deutsche Bank Nat'l Tr. Co.*, 223 Cal. App. 4th 261, 284-85 (2014) (holding that, under California law, a subordinate bona fide lease survives foreclosure, and the successor by foreclosure becomes the landlord).

The above issues call into question how Sobayo could enter into any lease of the residence. Indeed, this is why the bankruptcy court rhetorically asked:

> How can Sobayo therefore demand 100% of the unpaid rent when Kingsway and Nguyen had ownership interests during this period, or seek to collect any rent after Nguyen foreclosed on his 95% fee interest on July 3, 2019?

This question remains unanswered. Accordingly, there is no genuine dispute that Sobayo's authority to enter into any agreement with Musonge concerning the rental of the residence remains in bona fide dispute.

### b. The meaning of the lease documents.

The significance and meaning of the three lease documents submitted by Sobayo also remain in dispute. As the bankruptcy court recognized, the lease dated July 1, 2019, referenced certain obligations related to Musonge's occupancy of the residence that were to be "deferred effective June 30, 2019." But the document envisioned that a separate agreement was necessary and would be executed by August 31, 2019. The July 1, 2019 lease also provided that "this settlement offer" was final and non-negotiable, and "WILL BE CONSIDERED NULL AND VOID, IF NOT AGREED TO BY MARTIN MUSSONGE et al; and payment of July 1st received by or before Tuesday July 23rd, 2019." The record does show that Musonge later made some payments to Sobayo, but the earliest payment was dated September 1, 2019, well after the stated deadline. There is nothing in the record to indicate that Musonge timely made any payments required under the July 1, 2019 lease. Nor did the parties execute a separate payment agreement by the stated deadline. Significantly, there is nothing additional that indicates that Musonge specifically accepted the "settlement offer" contemplated by the July 1, 2019 lease.

The handwritten document dated September 14, 2019 further complicates any interpretation of these documents. The top of the

15

document is entitled "Addendum 2," though it appears different from the balance of the handwriting in the rest of the document. This document references "all payments and provisions of the drafted lease [presumably the July 1, 2019 lease]." It purports to incorporate them into the lease and defer all payments, giving Musonge "30 days to make a Satisfactory Arrangements in writing, of all amounts deferred and owing, in order to reconcile the drafted lease of July 1, 2019 with the addendum to lease offer of 9/14/2019." (The last reference in the quote presumably is to "Addendum 1.") The document also appears to give Sobayo the sole discretion to declare the agreement "of the 1st and 2nd Addendum lease" null and void. Still, nothing in Addendum 2 addresses when **retroactive** rent payments — those due through June 30, 2019 — might be due. There is no evidence that any such agreement was ever reached.

The other document dated September 14, 2019, is entitled "Residential Lease Agreement with Option to Purchase." This typed document includes a handwritten notation designating it as "Addendum 1." This notation suggests that the document somehow amends the July 1, 2019 lease, but there is no evidence as to when or why the handwritten notation was added. More importantly, there are material differences in the terms of the three documents. These included the duration of the leases, when the monthly rent was due, and the amount of the security deposit. Once again, Addendum 1 did not reference any terms for paying the accrued back rent. It did, however, warrant that the "landlord" was the

16

legal owner of the residence and had the legal right to sell the property under an option to purchase contained in the lease. But Nguyen already had foreclosed Kingsway's and Sobayo's interests. As noted above, by the time Sobayo signed the September documents, neither Kingsway nor Sobayo held any interest in the residence that they could lease, which calls into question the validity of the September documents.

Setting aside the questions surrounding Sobayo's authority to enter into the lease documents, it is unclear what, if any, agreement could have resulted from the documents Sobayo submitted into evidence. The July 1, 2019 document stated that it was null and void if certain things did not happen, and the record established that those things did not occur. Moreover, that document contemplated an additional agreement to address **back** rent owed through June 30, 2019. There is no evidence that the parties ever reached any such agreement. The very lease documents on which Sobayo relies reflect that the timing and manner of payment was a material term to the parties. *See Peterson Dev. Co. v. Torrey Pines Bank*, 233 Cal.App.3d 103, 115 (1991) (holding that a loan commitment letter is not a binding agreement unless it contains all material terms of the loan — including the terms of repayment); *see also Hines v. Lukes*, 167 Cal. App. 4th 1174, 1182 ("A settlement is enforceable under section 664.6 only if the parties agreed to all material settlement terms."). Yet, there was never agreement on that material term.

The clear failure of the parties to reach agreement as to all material terms regarding Musonge's alleged promise to pay back rent to Sobayo reflects the existence of another bona fide dispute. Given that back rent was by far the most significant component of Sobayo's Rent Claim, there is no genuine issue that Musonge asserted bona fide disputes regarding Sobayo's Rent Claim.

### c.    The amount of the Rent Claim.

Even assuming that Sobayo has some personal claim against Musonge, the **amount** of such claim also is subject to bona fide dispute. As explained above, the parties never agreed to the material terms by which Musonge would pay to Sobayo back rent for the period he continued to live at the residence after Kingsway purchased it. We acknowledge that Musonge may well owe Kingsway some amount for his continued use of the residence after Kingsway purchased the property. But there is a genuine dispute as to what amount might be owed and to whom. Indeed, it is unclear why negotiations regarding rent continued on the cusp of and after Nguyen's foreclosure.

As for Musonge's obligation to pay Sobayo rent for his occupancy of the residence on and after July 1, 2019, Sobayo ostensibly held a contractual right to receive rent from Musonge for only ten days — from July 1, 2019 through July 11, 2019, when Nguyen recorded the trustee's deed after she foreclosed Sobayo's interest. That amount, even if for the entire month of July 2019, would fall well short of the amount needed to support an

18

involuntary petition under § 303(b)(2). Arguably, Sobayo may have some claim against Musonge from and after November 2018, when Kingsway assigned to Sobayo 95% of its ownership interest. But even then, there is no evidence in the record establishing Sobayo's ownership of the Rent Claim based on his partial ownership. On the record presented, any attempt to assess or allocate the Rent Claim as between Kingsway and Sobayo would be pure speculation.

Sobayo assumes that he holds Kingsway's interest in any and all claims against Musonge because, in his mind, he and Kingsway are one in the same. For the reasons discussed above, that simply is not the case. Kingsway is a separate entity and there is nothing in the record to suggest that Sobayo has the right to assert Kingsway's claims against Musonge. As a result, even if Sobayo has a claim against Musonge for rent, the amount of such claim is subject to a bona fide dispute.

## CONCLUSION

In sum, the bankruptcy court was not charged with the task of "evaluat[ing] the potential outcome" of any disputes regarding Sobayo's claims. *See In re Vortex Fishing Sys., Inc.*, 277 F.3d at 1064. Rather, it was required to determine whether a genuine question existed whether Sobayo's claims against Musonge were subject to bona fide dispute as to liability or amount. Musonge raised substantial and serious issues challenging his liability and the amount of any claim. Sobayo's evidence failed to provide any clarity on these issues. To the contrary, Sobayo's

evidence was highly equivocal and itself demonstrated the bona fides of the disputes Musonge raised.

On this record, summary judgment was proper as no reasonable factfinder could have found an absence of "legitimate disagreement over whether money is owed, or … how much." *Id.* Accordingly, we AFFIRM the bankruptcy court's order granting summary judgment in favor of Musonge and dismissing Sobayo's involuntary petition.